JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

William Maguire and Krysta Maguire, h/w

## DEFENDANTS

Biomedical tissue Services, Ltd., et al.

**(b)** County of Residence of First Listed Plaintiff   **Plymouth County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **Bergen County**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Anapol Schwartz Weiss Cohan Feldman & Smalley, P.C., 1040 Kings Highway North, Suite 304, Cherry Hill, NJ  08034 856-482-1600

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  in excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE   William J. Martini   DOCKET NUMBER   MDL 1763

DATE

January 31, 2008

SIGNATURE OF ATTORNEY OF RECORD

/s/ Melissa Fry Hague

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| William  Maguire and Krysta Maguire<br>husband/wife<br><div align="center">Plaintiffs,</div><br>v.<br><br>BIOMEDICAL TISSUE SERVICES, LTD.;<br>REGENERATION TECHNOLOGIES, INC.;<br>SPINALGRAFT TECHNOLOGIES, LLC. as a<br>subsidiary of Medtronic Sofamor Danek, Inc.;<br>MEDTRONIC, INC.;<br>MEDTRONIC SOFAMOR DANEK, INC.;<br>MEDTRONIC SOFAMOR DANEK, USA, INC<br>JOHN DOE CORPORATIONS (1-10),<br>and JOHN DOE INDIVIDUALS (1-10)<br><br><div align="center">Defendants</div> | **DOCKET NO.**<br><br><br><br><br><br><br><br><br>**CIVIL ACTION**<br><br><br>**COMPLAINT** |

Plaintiffs, William  Maguire and Krysta Maguire, husband/wife, residing at 103 Forrest Avenue Extension, Plymouth, MA  02360, by way of Complaint against Defendants, state:

### THE PARTIES

1.      Plaintiffs, William  Maguire and Krysta Maguire, husband/wife (hereinafter "Plaintiffs") are adult individuals who reside at 103 Forrest Avenue Extension, Plymouth, MA 02360.

2.      Defendant, Biomedical Tissue Services, LTD (hereinafter "BTS"), upon information and belief, is a New Jersey corporation with its principal place of business located at 2125 Center Avenue, Suite 300, Fort Lee, New Jersey  07024.

3.      Defendant, Regeneration Technologies, Inc, (hereafter RTI), upon information and belief, is a Delaware corporation with its principle place of business located at 11621 Research Circle, Alachua, Florida 32615.

4.      Defendant, SpinalGraft Technologies, LLC (hereafter SpinalGraft), as a subsidiary of Medtronic Sofamor Danek, Inc. upon information and belief, is a Tennessee corporation with its principle place of business located at 4340 Swinnea Road, Suite 39, Memphis, Tennessee 38118.

5.      Defendant, Medtronic, Inc., upon information and belief, is a Minnesota corporation with its principal place of business located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.

6.      Defendant, Medtronic Sofamor Danek, Inc., upon information and belief, is an Indiana corporation with its principal place of business located at 1800 Pyramid Place, Memphis, Tennessee 38132.

7.      Defendant, Medtronic Sofamor Danek, USA, upon information and belief, is a Tennessee corporation with its principal place of business located at 1800 Pyramid Place, Memphis, Tennessee 38312.

8.      Defendants John Doe Corporations 1-10 are subsidiaries, sister corporations, holding corporations or other affiliated entities or agents of the other named Defendants, who were responsible for the injuries suffered by Plaintiffs.

9.      Defendants John Doe Individuals 11-20 are individuals (fictitious names for individuals or entities whose actual identities are unknown) who to the best of Plaintiffs' knowledge and belief, are and were the owners, agents, subcontractors, employees, servants, designers, manufacturers, assemblers, inspectors, distributors, packagers, and/or others who

worked at the direction of, and/or on behalf of, Defendants and/or their owners, managers, and/or other personnel.

## JURISDICTION

10.    This Court has original diversity jurisdiction over the instant action pursuant to, 28 U.S.C. §1332 as a suit between citizens of different states where the matter in controversy exceeds $75,000.00.

## VENUE

11.    Venue is proper in this district pursuant to 28 U.S. C. §1301(a)(2) because a substantial portion of the events giving rise to Plaintiffs' claims arose in this district.

## FACTS

12.    Plaintiffs allege that beginning in 2002, former New Jersey dentist and oral surgeon, Mastromarino, entered into partnership with Nicelli, a master embalmer, to reopen BTS for the purpose of harvesting human tissue, bone, and organs from human corpses for resale to commercial human tissue, bone, and organ processors and resellers.  When human tissue, such as ligaments, tendons, heart valves, skin, or bone, are removed from one human for preparation and transplantation into another, the tissue, bone, or organ is known as an allograft.

13.    Plaintiffs allege that shortly after opening their business, Mastromarino and Nicelli began harvesting tissue and bones from human bodies they improperly obtained from various funeral homes, and perhaps from local city morgues in cases in which the bodies were unclaimed or unidentified.

14.    Plaintiffs allege that several area funeral homes provided corpses to Mastromarino, Nicelli and BTS.

15.     Plaintiffs allege that the deceased individuals obtained by BTS from funeral homes and dissected by Mastromarino never intended to be tissue donors, or if they did they did not give their consent to have their tissues or bones removed with the correct authorization, and their families never authorized the use of their bodies for human tissue harvesting or later transplantation.

16.     Plaintiffs allege that to circumvent obtaining releases from the families of the dissected corpses, BTS, Mastromarino, Nicelli and/or their agents or employees secretly dissected the bodies and prepared them for burial without the knowledge of family members. Such dissections included replacement of harvested bone and tissue with foreign objects, such as PVC piping and other objects, so that bodies would still appear normal for their pending visitations and funerals.

17.     Plaintiffs allege that BTS, Mastromarino, Nicelli, and/or their agents or employees also altered the medical records, death certificates, and even identities of the corpses to conceal the lifestyle and medical or disease histories of the corpses.  Thus, they harvested and sold tissue or bone for implantation that came from person who potentially suffered from chronic infectious diseases such as syphilis, HIV-1, HIV-2, AIDS, or hepatitis and who died from these diseases or from cancer or heart disease.

18.     Once removed, the stolen human tissue or bones were sold by BTS to certain commercial tissue processing and allograft distribution companies, including Medtronic, SpinalGraft and RTI for processing and resale throughout the United States.

19.     Plaintiffs allege that Defendants Medtronic Inc., Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek, USA (hereafter collectively revered to as "Medtronic"), either directly or through its partners, affiliates, agents, or servants, holds itself out to the public as a

4

business engaged in the sale, promotion, marketing, harvesting, testing, procurement, preservation, and distribution of products from human tissues and bones for medical use and implantation in the human body to hospitals, physicians, and surgery centers nationwide. The allografts are implanted into patients undergoing orthopedic, dental, oral maxillofacial, urinary, and cardiovascular surgeries. Medtronic promotes and markets its products to health care providers and the general public with assurances of safety, fitness, and merchantability.

20.    Plaintiffs allege that Defendant SpinalGraft either directly or through its partners, affiliates, agents or servants, hold itself out to the public as a business engaged in the sale, promotion, marketing, harvesting, testing, procurement, preservation, and distribution of products from  human tissues and bones for medical use and implantation in the human body to hospitals, physicians, and surgery centers nationwide. The allografts are implanted into patients undergoing orthopedic, dental, oral maxillofacial, urinary, and cardiovascular surgeries. SpinalGraft promotes and markets its products to health care providers and the general public with assurances of safety, fitness, and merchantability.

21.    Plaintiffs allege that Defendant RTI, either directly or through its partners, affiliates, agents, or servants, holds itself out to the public as a business engaged in the sale, promotion, marketing, harvesting, testing, procurement, preservation, and distribution of products from human tissues and bones for medical use and implantation in the human body to hospitals, physicians, and surgery centers nationwide. The allografts are implanted into patients undergoing orthopedic, dental, oral maxillofacial, urinary, and cardiovascular surgeries. RTI promotes and markets its products to health care providers and the general public with assurances of safety, fitness, and merchantability.

22.    Defendants, John Doe Corporations 1-10 were negligent and/or otherwise responsible in some manner for the events and happenings referred to herein and negligently or otherwise caused the injuries or damages as alleged in this Complaint.

23.    Defendants, John Doe Individuals 1-10 were responsible in some manner for the events and happenings referred to herein and negligently or otherwise caused the injuries or damages as alleged in this Complaint.

24.    Plaintiffs allege that Defendants Medtronic, SpinalGraft and RTI in acquiring tissue, bones, and organs for making allografts, are subject to their own internal procedures, based on industry standards and state and federal regulations, which require them to (1) sterilize the allografts using their own patented processes to remove viruses, bacteria, fungi, and spores, and (2) to ensure that donors and their raw human tissues and bones meet strict criteria before allografts are released for implantation by conducting stringent blood tests, medical record investigations, medical histories, coroner report analyses, lifestyle screenings to determine donor behavior and lifestyle risks, and interviews with a donor's relatives or family members to confirm the overall lifestyle of the donor and the donor's consent to tissue removal after death.

25.    Plaintiffs allege that beginning in or around 2000, Mastromarino and Nicelli, doing business as BTS, illegally dissected scores of human corpses, harvesting millions of dollars worth of tissue, bone, and organs and resold all the human material to Defendant allograft processors throughout the United States and Canada.

26.    Plaintiffs allege that during the same period, Defendants Medtronic, SpinalGraft and RTI, in violation of industry standards, their own internal safety and testing procedures, and state and federal laws, purchased, processed into allografts, and resold for implantation substantial quantities of tissue, bone, and organs they acquired from BTS.

27.    On October 13, 2005, the FDA advised the public of a voluntary recall of human tissue for implantation of all tissue and bone product distributed by BTS.

28.    Plaintiffs allege that Medtronic, SpinalGraft and RTI failed to recognize or acknowledge the deficient testing, screening, or consent of the donor and the donor product, but nonetheless proceeded to permit the allograft products to enter into the stream of commerce.

29.    On or about September 15, 2004, Plaintiff, William Maguire, underwent surgery at Jordan Hospital, at which time he received cadaver bone tissue.  The surgery was performed by Alan R. Murphy, M.D.

30.    Alan R. Murphy, M.D. advised Plaintiff, William Maguire that Biomedical Tissue Services, LTD. was involved in a scheme of illegally obtaining body parts from corpses without properly screening the parts for certain infectious diseases and it was determined that William Maguire was a recipient of certain bone and tissue that was illegally extracted from corpses.

31.    Plaintiff, William Maguire, had a series of blood tests run for HIV, hepatitis B, hepatitis C and syphilis.  Plaintiff, William Maguire, was notified that the results came back negative.

### COUNT ONE - VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. § 56:8-1 et seq. PLAINTIFFS vs. ALL DEFENDANTS

32.    Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

33.    Defendants' sale of human tissue and bones falls within the purview of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 et seq. ("NJCFA").

34.    Defendants as corporations, companies or sellers, are "persons" within the meaning of the Act, and as such are prohibited from engaging in deceptive acts and practices, as set forth more fully below.

35.    Defendants have employed unconscionable commercial practices and/or fraud or other unlawful acts in connection with the sale and/or advertising of human body parts in violation of the Act; including but not limited to, making material misrepresentations about the quality, characteristics, benefits, affiliation and/or status of the body parts; and/or engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

36.    The following acts, uses or employments by Defendants constitute unconscionable commercial practices, deceptions, frauds, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with intent that Plaintiff rely upon such concealment, suppression or omission, in connection with the sale and/or marketing of the human body parts are unlawful under the Act:

a.    Whether Defendants falsely represented in their written brochures, promotional materials and advertisements, distributed throughout the United States, that their supply of human tissues and bones are safe for use in surgical transplants and legally obtained from approved donors.

b.    Whether Defendants engaged in deceptive acts and practices, including but not limited to, representing that their supply of human tissues and bones have been tested for infectious diseases, lawfully came from authorized donors.

c.    Whether Defendants represented that their supply of human tissue and bones had certain approval, characteristics, affiliation or status that they do not have.

8

Whether Defendants knowingly or negligently misrepresented, concealed and/or suppressed the fact that the supply of human tissue and bones were seriously defective, putting each recipient of such body parts at direct risk of harm and infectious diseases.

d.      Whether Defendants unfairly exploited unwarranted trust in their well known names and improperly touted their reputations for quality;

e.      Whether Defendants committed consumer fraud, were negligent and/or acted with reckless disregard for the rights, safety, and health of transplant recipients.

37.     As a direct result of Defendants' acts and omissions, as described herein, Plaintiff was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages, and other damages.

38.     WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT TWO - PRODUCTS LIABILITY (N.J.S.A. 2A:58C-1 et seq.) PLAINTIFFS vs. ALL DEFENDANTS

39.     Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

40.     At all times relevant, Defendants were engaged in some manner in the business of procuring, harvesting, testing, evaluating, preserving, selling, marketing, labeling, advertising or supplying products from human tissue and bone for implantation in the human body.

41.     At all times relevant, Defendants intended the tissue or bone product implanted in Plaintiff, William Maguire, to be implanted in a living human body.

9

42.    At all times relevant, Defendants negligently and carelessly procured, harvested, tested, researched, evaluated, preserved, supplied, marketed, labeled, advertised, supplied, sold, warned or failed to warn of the dangers associated with the subject donor tissue or bone product.

43.    Defendants, harvested, retrieved, sold, promoted, marketed, labeled, tested, procured, preserved, inspected, designed, manufactured, or distributed human tissue, human bone, human body parts, and medical products used for implantation into the human body.

44.    Defendants reasonably expected that the human tissue, human bone, body part, and medical products used for implantation into the human body would reach an individual such as Plaintiff, William  Maguire, as the ultimate user or consumer in the condition it was in at the time of implantation.

45.    At the time of implantation, the product implanted into Plaintiff, William Maguire, when sold was not merchantable or reasonably suited to the use intended, and its condition when sold was the proximate cause of the injury sustained by Plaintiff, William Maguire.

46.    At the time of implantation, the product implanted into Plaintiff, William Maguire, as set forth above was unreasonably dangerous, defective, or not reasonably fit, suitable, or safe for its intended use, and failed to perform in a manner reasonably expected in light of its nature and intended function, and the defects subjected the Plaintiff, William Maguire, to an unreasonable risk of harm as set forth in this Complaint.

47.    The product described in this Complaint was defective as marketed, in that the advertising and marketing campaigns and programs undertaken by Defendants misled consumers or their physicians as to the safety of the product and failed adequately to warn consumers or their physicians of the dangerous conditions as described in this Complaint.

48.     The product implanted in Plaintiff, William Maguire, and described in this Complaint was defective in its design, in that the risks inherent in its design outweigh the utility of the products so designed.

49.     The product described in this Complaint was fully defective in its design, manufacture, marketing, assembly, and warning because it failed to provide for a safe condition when used in the manner it was intended and was furnished without adequate warning.

50.     By their acts or omissions, Defendants, all or certain of them, acted fraudulently, maliciously, or oppressively toward Plaintiff, William Maguire, and others by compromising their safety for profit. Defendants, all or certain of them, had actual knowledge, or should have had actual knowledge, of the serious potential dangers posed to Plaintiff, William Maguire, and others from contaminated donor tissue or bone, as well as its inadequately tested, treated, evaluated, or labeled human tissue and bone products, and that these products posed serious dangers to person receiving them as implantations.

51.     Defendants, all or certain of them, intentionally or in a willful or conscious disregard for the safety of Plaintiff, William Maguire, and other using their products, misled Plaintiff, William Maguire, and health care professionals, including doctors, surgeons, and hospitals, regarding the danger posed to Plaintiff, William Maguire, and other patients from potentially contaminated human tissue or bone so that Defendants, all or certain of them, could increase their financial profits.

52.     The product described in this Complaint was defective in its design, manufacture, or warnings that accompanied it.

53.    Defendants made representations regarding the safety, sterility, and uncontaminated condition of their tissue and bone products without any reasonable grounds for believing the representations to be true.

54.    At all times relevant, Defendants' representations were made with the intent to induce Plaintiff, William Maguire, her health care providers, and the general public to rely on them.

55.    At all times, Plaintiff, William Maguire, and her health care providers were unaware of the falsity or misleading nature of Defendants' representations, acted in reliance on the truth of the representations, and were justified in doing so.

56.    Defendants' acts and omissions breached implied warranties of fitness and merchantability of the product supplied to and implanted in Plaintiff, William Maguire.

57.    As a direct result of Defendants' acts and omissions, as described herein, Plaintiff, William Maguire, was caused physical injury, and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional stress and harm, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages, and other damages.

58.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT THREE – NEGLIGENCE
## PLAINTIFFS vs. ALL DEFENDANTS

59.    Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

60.     At all times relevant, Defendants were engaged in some manner in the business of procuring, harvesting, testing, evaluating, preserving, selling, marketing, labeling, advertising or supplying products from human tissue and bone for implantation in the human body.

61.     At all times relevant, Defendants intended the tissue or bone product implanted in Plaintiff, William Maguire, to be implanted in a living human body.

62.     At all times relevant, Defendants negligently and carelessly procured, harvested, tested, researched, evaluated, preserved, supplied, marketed, labeled, advertised, supplied, sold, warned or failed to warn of the dangers associated with the subject donor tissue or bone products.

63.     As a direct and proximate result of the conduct of Defendants as stated above, Plaintiff, William Maguire, was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to obligations for medical services and expenses present and future lost wages, and other damages.

64.     WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT FOUR- NEGLIGENT MISREPRESENTATION
## PLAINTIFFS vs. ALL DEFENDANTS

65.     Plaintiffs incorporate the previous paragraphs by reference as though fully set forth herein.

66.     Defendants made the alleged misrepresentations described above regarding the safety, sterility, and uncontaminated condition of their tissue and bone products without any reasonable grounds for believing the representations to be true.

67      At all times relevant, Defendants' representations were made with the intent to induce Plaintiff, William Maguire, her health care providers, and the general public to rely on them.

68.      At all times relevant, Plaintiff, William Maguire, and her health car providers were unaware of the falsity or misleading nature of Defendants' representations, acted in reliance on the truth of the representations, and were justified in doing so.

69.      As a direct and proximate result of the fraudulent and misleading conduct described above, Plaintiff, William Maguire, was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to obligations for medical services and expenses, present and future lost wages, and other damages.

70.      WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT FIVE – INTENTIONAL MISREPRESENTATION
## PLAINTIFFS vs. ALL DEFENDANTS

71.      Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

72.      Defendants, all or certain of them, made numerous false, misleading, and fraudulent representations to the general public and to Plaintiff, William Maguire's health care providers, leading Plaintiff, William Maguire's health care providers, among others, to believe that Defendant's tissue and bone product was safe, sterile and uncontaminated.

73. These representations by Defendants, all or certain of them, were false. Defendants' tissue and bone products were not safe and had dangerous and potentially life-threatening effects and consequences.

74. These representations by Defendants were material, in that if Plaintiff, William Maguire and his health care providers had known the truth, Plaintiff, William Maguire, would not have accepted the product into his body.

75. The fact that the product implanted into Plaintiff, William Maguire, was not what Defendants represented it to be was susceptible of knowledge.

76. Defendants, all or certain of them, made these representations knowing them to be false and misleading, and with the intent to defraud, mislead, and deceive Plaintiff, William Maguire's health care providers, and with the intent to induce Plaintiff, William Maguire's health care providers, Plaintiff, William Maguire, and the general public, to use Defendants' Products.

77. Plaintiff, William Maguire's health care providers, and the general public, used Defendants' products. If Plaintiff, William Maguire, and his health care providers had known the truth about the facts and dangers posed by Defendants' products, they would not have used Defendants' products.

78. Plaintiff, William Maguire, and his health care providers acted in reliance on Defendants' misrepresentation.

79. As a direct and proximate result of the fraudulent and misleading conduct described herein, Plaintiff, William Maguire, was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional stress and

harm, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages, and other damages.

80.     In performing the described acts or omissions, Defendants, all or certain of them, acted fraudulently, maliciously, or oppressively toward Plaintiff, William Maguire, and others by compromising their safety for the benefit of profit. Defendants, all or certain of them, had actual knowledge, or should have had actual knowledge, of the serious dangers posed to Plaintiff, William Maguire, and others from contaminated donor tissue or bone, as well as inadequately tested, treated, evaluated, or labeled human tissue and bone products, and that these products posed serious danger to persons receiving them.

81.     Defendants, all or certain of them, intentionally or in a willful or conscious disregard for the safety of Plaintiff, William Maguire, and others using its products, misled Plaintiff, William Maguire, and health care professionals, including doctors, surgeons, and hospitals, regarding the danger posed to Plaintiff, William Maguire, and other patients from contaminated human tissue or bone so that Defendants, all or certain of them, could increase their financial profit.

82.     As a direct and proximate result of Defendants' misrepresentations, Plaintiff, William Maguire, was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to obligations for medical services and expenses, present and future lost wages, and other damages.

83.     WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT SIX – BREACH OF EXPRESS WARRANTY
## PLAINTIFFS vs. ALL DEFENDANTS

84.    Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

85.    Defendants placed the bone and tissue product that is the subject of this Complaint into the stream of commerce for sale and recommended its use to physicians, surgeons, and consumers without adequately warning physicians, surgeons, the FDA, and consumers including the Plaintiffs, of the risks associated with its use.

86.    Defendants had a duty to exercise reasonable care in the harvesting, retrieving, selling, promoting, marketing, labeling, testing, procuring, preserving, inspecting, designing, manufacturing, or distributing human tissue, human bone, body parts, and medical products used from implantation into the human body, including a duty to:

   a.    ensure that the product did not cause the user reasonably dangerous consequences;

   b.    warn of dangerous and potentially fatal risks; and

   c.    disclose adverse material facts when making representations to physicians, the FDA, and the public at large, including Plaintiffs.

87.    When Plaintiff's physician advised the Plaintiff, William Maguire, of the possibility of using the product at issue, both Plaintiff and his physicians reasonably relied on the Defendants and their agents to disclose known defects, risks, and dangers, as well as to advise of potentially defective manners of harvesting, retrieving, selling, promoting, marketing, labeling, testing, procuring, preserving, inspecting, designing, manufacturing, or distributed the product at issue.

88.   Plaintiff's physicians, the FDA, or Plaintiff, William Maguire, had no knowledge of the falsity or incompleteness of the Defendants' statements and representations concerning the product at issue. Plaintiffs justifiably and detrimentally relied on the warranties and representations of Defendants regarding the product at issue.

89.   Defendants were under a duty to disclose the defective and unsafe nature of the product at issue to physicians, the FDA, consumers, and users, such as Plaintiff, William Maguire. Defendants had sole access to material facts concerning the defects, and Defendants knew that physicians, the FDA, and users, such as Plaintiffs, could not reasonably have discovered such defects.

90.   By their acts and omissions, Defendants, their agents and employees expressly warranted to Plaintiff and Plaintiff's physicians that the products were merchantable and fit for the purpose intended.

91.   This warranty was breached because the product at issue was not safe and effective as Defendants presented, and Plaintiff, William Maguire, was injured.

92.   As a direct result of Defendants' acts and omissions, as described herein, Plaintiff, William Maguire, was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages, and other damages.

93.   WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT SEVEN – BREACH OF IMPLIED WARRANTY
## PLAINTIFFS vs. ALL DEFENDANTS

94.    Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

95    The body parts transplanted in Plaintiff, William Maguire, carried with them the implied warranty of merchantability. Plaintiff alleges that such implied warranties include that the body parts are safe and non-defective for their intended use. As applied to transplantable human tissues and bones, such warranty includes a warranty of reasonable safe protection from infectious diseases, which was breached in that the body parts, in fact are defective and unreasonably dangerous with respect to potential infectious diseases.

96.    Further, there is an implied warranty of merchantability that the body parts were obtained through legal means. Plaintiff alleges that such implied warranties include that there was authorization to extract the body parts from certain corpses. As applied to transplantable human tissues and bones, such warranty includes a warranty of legally obtained body parts for transplant, which was breached in that the body parts, in fact, were obtained through illegal means and without authorization.

97.    These implied warranties have been breached in that: Human tissues and bone intended for transplant use were illegally extracted without authorization, the illegally extracted tissues and bones were not tested for infectious diseases; Defendants failed to develop adequate remedies and have failed to provide such remedies at its own cost.

98.    Defendants failed to exercise good faith in determining the presence of safety-related defects by failing to follow internal procedures for making such determinations.

99.    None of the above referenced warranties have been effectively disclaimed by any Defendant in this action.

100. Defendants are liable for breach of implied warranty of merchantability as set forth above.

101. WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT EIGHT – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFFS vs. ALL DEFENDANTS

102. Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

103. Defendants' acts and omissions demonstrated conduct that was negligent, and this negligence caused Plaintiff, William Maguire, severe emotional distress, given the nature of the harm caused as described in this Complaint.

104. As a direct result of Defendants' acts and omissions, as described herein, Plaintiff, William Maguire, was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional distress and harm, financial or economic loss, including but not limited to, obligations for medical services, and expenses, present and future lost wages and other damages.

105. WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT NINE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFFS vs. ALL DEFENDANTS

106. Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

107.    Defendants' acts omissions demonstrated conduct that can be deemed extreme, outrageous, and unnecessarily reckless, in a deliberate intent to cause Plaintiff, William Maguire, significant emotional distress, or that can be deemed to be a willful and wanton disregard of the fact that such emotional distress could and should be expected.

108.    As a direct result of Defendants' acts and omissions, as described herein, Plaintiff, William Maguire, was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages, and other damages.

109.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT TEN – BATTERY
## PLAINTIFFS vs. ALL DEFENDANTS

110.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

111.    Defendants intentionally, willfully, recklessly, and negligently put Plaintiff, William Maguire in reasonable fear of a harmful or offensive contact with his body and the Defendants intended to cause harmful or offensive contact with Plaintiff, William Maguire which directly and/or indirectly resulted in harmful and offensive contact with his body as set forth under the New Jersey Law.

112.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT ELEVEN - RESPONDEAT SUPERIOR
## PLAINTIFFS vs. ALL DEFENDANTS

113.    Plaintiffs incorporates the above averments by reference as if set forth fully at length herein.

114.    At all relevant times, Mastromarino, Nicelli and John Doe individuals (1-10) were employees, agents, or servants of BTS, Medtronic, SpinalGraft, RTI and/or John Doe Corporations 1-10.

115.    The business entity or corporate Defendants are responsible or vicariously liable for the negligence, acts and omissions of their agents, employees, and servants based on the theory of respondeat superior.

116.    As a direct result of Defendants' acts and omissions, as described herein, Plaintiff, William Maguire, was caused physical injury and shall in the future be caused to suffer severe personal injuries, pain and suffering, severe emotional distress and harm, financial or economic loss, including, but not limited to, obligations for medical services and expenses, present and future lost wages, and other damages.

117.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT TWELVE – LOSS OF CONSORTIUM
## PLAINTIFFS vs. ALL DEFENDANTS

118.    Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

119.    Plaintiff, Krysta Maguire is the wife of Plaintiff, William Maguire, and is entitled to his care, comfort, companionship, services and consortium.

120.    As a direct a proximate result of the negligence of the Defendants herein, Krysta Maguire, the wife of Plaintiff, William Maguire, has been and will be in the future deprived of the care, comfort, companionship, services and consortium of her spouse, Plaintiff, William Maguire.

121.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT THIRTEEN - PUNITIVE DAMAGES
## PLAINTIFFS v. ALL DEFENDANTS

122.    Plaintiffs incorporate the above averments by reference as if set forth fully at length herein.

123.    Plaintiffs are entitled to punitive damages because the acts and omissions set forth herein were done in grossly negligent, willful, reckless and wanton fashion with a conscience indifference to the rights and members of the likely consumers of the products, such as Plaintiff and Plaintiff's health care providers in particular.

124.    Defendants knew or should have known that the aforementioned implant was defective as it was not properly screened for infectious disease and/or other medical issues which was a willful, reckless and wanton disregard for Plaintiff's health.

125.    Defendants knew or should have known that the aforementioned implant was defective, because they failed to ensure proper and adequate consent was given for the donation, which was a willful, reckless and wanton disregard for Plaintiff's health.

126.    Defendants knew or should have known that the aforementioned implant was defective, because they failed to obtain proper medical history from the donor, which was a willful, reckless and wanton disregard for Plaintiff's health.

127.    Defendants knew or should have known that the medical, state and consent documentation of the donor of the implant was inaccurate or falsified or incorrect, which was a willful, reckless and wanton disregard for Plaintiff's health.

128.    Despite said knowledge and the extreme unreasonable risk of injury or death, Defendants permitted said products to be promoted, marketed, sold, supplied, and/or distributed for the purpose of implantation into medical patients. Defendants' conduct reflects a willful, reckless and wanton disregard for Plaintiff's health. As a result, each Defendant herein is liable to Plaintiff for exemplary and/or punitive damages to be determined at time of trial.

WHEREFORE, Plaintiff demands judgment against Defendants jointly, severally and/or alternatively for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems proper.

Respectfully submitted,


BY:    _____/s/ Melissa Fry Hague_____
LAWRENCE R. COHAN, ESQUIRE
MELISSA FRY HAGUE, ESQUIRE
Anapol, Schwartz, Weiss, Cohan
Feldman & Smalley
lcohan@anapolschwartz.com
1040 N. Kings Highway, Suite 304
Cherry Hill, New Jersey 08034
856-482-1600
Attorneys for Plaintiffs

24

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

<div align="right">

_____/s/ Melissa Fry Hague_____
LAWRENCE R. COHAN, ESQUIRE
MELISSA FRY HAGUE, ESQUIRE
Attorneys for Plaintiffs

</div>